UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COZUMEL LEASING, LLC, | CASE NO. 16-5089 RJB |
| Plaintiff, | ORDER ON DEFENDANTS DAVID KILCUP, INTERNATIONAL JETS, INC., AND ALDEN ANDRE'S MOTION TO DISMISS |
| v. | |
| INTERNATIONAL JETS INC., a Washington corporation, DAVID KILCUP, an individual, ALDEN ANDRE, an individual, and AIRCRAFT SOLUTIONS LLC, a Washington limited liability company, | |
| Defendant. | |

This matter comes before the Court on Defendants David Kilcup, International Jets, Inc., ("International Jets") and Alden Andre's Motion to Dismiss. Dkt. 54. The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This case arises out of Plaintiff's purchase of a 1977 Cessna Citation ISP ("aircraft") from International Jets that Plaintiff asserts was not airworthy and required thousands of dollars to repair. Dkt. 1. Defendants International Jet, its president, David Kilcup, and his associate, Alden Andre, move for dismissal of all claims against them. For the reasons provided below, Defendants' Motion to Dismiss (Dkt. 54) should be denied.

ORDER ON DEFENDANTS DAVID KILCUP, INTERNATIONAL JETS, INC., AND ALDEN ANDRE'S MOTION TO DISMISS- 1

# I.  FACTS

The following facts are taken from the Amended Complaint (Dkt. 48). In September of 2013, International Jets advertised the sale of the aircraft. Dkt. 48, at 2. On September 17, 2013, David Fallang contacted Defendant David Kilcup, the president of International Jets, about purchasing the aircraft. *Id.* Fallang is a "representative" of Plaintiff Cozumel Leasing, LLC ("Cozumel"), whose sole member is the Fallang Family Limited Partnership. *Id.* Fallang "intended to purchase the aircraft primarily for personal, family, or household use and not for commercial or business use." *Id.* In response to Fallang's inquiry about a pre-purchase inspection, Kilcup stated that the aircraft had a Phase I-IV inspection in the spring of 2013, and was scheduled for a Phase V inspection under its prior lease. *Id.,* at 3. (The Amended Complaint alleges that a Phase V inspection is "an intensive and comprehensive inspection performed on aircraft . . . every 1,200 hours or 36 months of flight, whichever comes first." *Id.*) Fallang and Kilcup agreed that the Phase V inspection would be completed by Defendant Aircraft Solutions, LLC. *Id.* Kilcup indicated they would render the aircraft airworthy so that it could be flown to Texas. *Id.* Kilcup informed Fallang that if he could not be reached, Fallang should contact Defendant Alden Andre, Kilcup's associate. *Id.*

Kilcup sent Fallang a Letter of Intent ("LOI"), a copy of which is attached to the Amended Complaint. Dkt. 48-1. The LOI provides that the aircraft will be purchased for $1,430,000 subject, in part, to the following: "1) Aircraft is to be delivered in an airworthy condition, no damage history, represented per the information received, current on its inspection program, and with a clear and unencumbered title. 2) A satisfactory pre-purchase inspection is to be completed at buyer's expense . . ." Dkt. 48-1, at 2. The LOI also provides:

**DISCLAIMER**

BUYER REALIZES THAT THE AIRCRAFT IS USED, AND BUYER AGREES THAT THE AIRCRAFT IS PURCHASED "AS IS" TO THE EXTENT ALLOWED BY APPLICABLE LAW, (I) SELLER MAKES NO WARRANTIES, (II) BUYER WAIVES AS TO SELLER ALL WARRANTIES, WHETHER AS TO MERCHANTABILITY, FITNESS, OR OTHERWISE, AND (III) BUYER AGREES THAT SELLER SHALL NOT BE LIABLE FOR ANY GENERAL, CONSEQUENTIAL, OR INCIDENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOSS OF USE OR LOSS OF PROFITS, OR ANY DAMAGES CLAIMED BY THE BUYER OR ANY OTHER PERSON OR ENTITY UPON THE THEORIES OF NEGLIGENCE OR STRICT LIABILITY IN TORT.

*Id.* (*emphasis in original*). Fallang signed the LOI for "Cozumel Leasing LLC" on September 21, 2013 and Kilcup for International Jets on September 23, 2013. *Id.*

According to the Amended Complaint, Kilcup assured Fallang that the Phase V inspection would be an adequate pre-purchase inspection. Dkt. 48, at 4. Kilcup also stated that "a few maintenance deficiencies would be found during the Phase V inspection . . . and that he intended to deliver the aircraft to Cozumel in an airworthy condition." *Id.*

An "Aircraft Sales Agreement" ("Sales Agreement"), dated October 12, 2013, is also attached to the Amended Complaint (Dkt. 48-2). Although it does not have a signature for International Jets, the Court will assume, for purposes of this motion at least, that this is the parties' Sales Agreement, in part because International Jets does not assert otherwise. The Sales Agreement provides, in relevant part:

> PURCHASER agrees to pay SELLER the total purchase price of $1,430,000.00 USD. The PURCHASER will expect the aircraft to be delivered in an airworthy condition with no damage history, with all systems operating normally, all Airworthiness Directives and Mandatory Service Bulletins complied with and all logbooks in the SELLER's possession. The PURCHASER, at the PURCHASER'S expense will perform a pre-purchase inspection at a location acceptable to both parties. The SELLER will remedy all airworthy discrepancies. An airworthy discrepancy is defined as any item discovered during the pre-purchase inspection and included in the Inspection Report which the Inspection Facility deems to render the Aircraft unairworthy and necessary to be corrected to render the

    Aircraft airworthy.  If at any point during pre-purchase inspection the cost of AIRWORTHY discrepancies exceeds $25,000.00 the Seller has the right to terminate this sale and refund the PURCHASER for all the PURCHASER'S out of pocket expenses incurred during the pre-purchase inspection and repositioning of the aircraft. Should the aggregate cost of NON-AIRWORTHY discrepancies exceed $25,000.00 the PURCHASER has the right to terminate this sale and receive a refund of their deposit from the Escrow Company unless SELLER agrees to correct those NON- AIRWORTHY items at SELLER's expense.  The PURCHASER will place a fully refundable deposit in the amount of $50,000.00 at JetStream Escrow and Title Service. The deposit will become non-refundable upon receipt of the signed Visual Acceptance Certificate in the form of Exhibit B hereto attached following SELLER's visual inspection of the Aircraft at Spokane, Washington and a demonstration test flight in the Aircraft.  The deposit is non-refundable subject only to the performance of the parties under the terms and conditions of this Agreement.  The Balance due and payable at time of closing/delivery of said Aircraft in the amount of $1,380,000.00 USD.

Dkt. 48-2, at 2.  It also provides:

    THE AIRCRAFT IS BEING SOLD ON AN AS IS BASIS, AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DECRIPTION OF THE AIRCRAFT. Seller disclaims all express or implied warranties or representations of any kind or nature whatsoever including merchantability and fitness except that Seller warrants that the Aircraft will be delivered with the appropriate Bill of Sale and all other title documents.

*Id.,* at 3 (*emphasis in original*).  The Sales Agreement further states, "Purchaser warrants the terms and conditions of this Sales Agreement were fully read and understood and that they constitute the entire agreement between the parties.  There are no other agreements written or oral which pertain to the sale of the Aircraft." *Id.,* at 4.  Fallang signed the Sales Agreement on October 14, 2013. *Id.*, at 5.

    According to the Amended Complaint, the aircraft was moved to Aircraft Solutions on October 18, 2013 for the Phase V inspection.  Dkt. 48, at 4.

    On October, 21, 2013, Fallang took the aircraft for a test flight, with Ben Hoffman operating as pilot.  *Id.*  During this 18-minute flight, "there were two separate flight canceling failures resulting from the starboard engine twice exceeding its temperature limitation." *Id*.

ORDER ON DEFENDANTS DAVID KILCUP, INTERNATIONAL JETS, INC., AND ALDEN ANDRE'S MOTION TO DISMISS- 4

According to the Amended Complaint, Kilcup stated he would speak with the people at Aircraft Solutions and "assured Fallang that these problems, along with any others, would be found and resolved during the pre-purchase Phase V inspection." Dkt. 48, at 5.

On October 24, 2013, Fallang executed the Visual Acceptance Certificate, Exhibit B to the Sales Agreement. Dkt. 48-2, at 8. The Amended Complaint also purports to include Exhibit D to the Sales Agreement, entitled "Aircraft Warranty Bill of Sale," which includes only a signature line for International Jets, but is also not signed. Dkt. 48-2, at 10-11. This document provides, in part:

> Other than the warranties of title and the absence of liens or encumbrances expressly set forth in the Agreement or in this Warranty Aircraft Bill of Sale, the Aircraft and Aircraft Documentation is being sold on a strict "AS IS, WHERE IS" basis and without recourse or warranty. SELLER HEREBY DISCLAIMS ALL WARRANTIES RELATING TO THE AIRCRAFT AND THE AIRCRAFT DOCUMENTATION, AND PURCHASER AGREES THAT IT ACQUIRED THE AIRCRAFT AND THE AIRCRAFT DOCUMENTATION FROM SELLER ON AN "AS IS, WHERE IS" AND "WITH ALL FAULTS" BASIS.  WITHOUT LIMITING THE GENERALALITY OF THE FOREGOING, PURCHASER HEREBY RELEASES, RENOUNCES AND DISCLAIMS (a) ANY WARRANTY AS TO THE AIRWORTHINESS OR CONDITION OF THE AIRCRAFT; (b) ANY IMPLIED WARRANTY OF MERCHANTABILITY  OR FITNESS; (c) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE; (d) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE ACTUAL OR IMPUTED NEGLIGENCE OF SELLER; AND (e) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF OR DAMAGE TO ANY TANGIBLE OR INTANGIBLE THING, FOR LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

*Id.* (*emphasis in original*).

On November 5, 2013, Kilcup told Fallang that the Phase V inspection was 90% complete and that he had approved repair of all maintenance deficiencies, including replacement of a main landing gear actuator due to a leak. *Id.*

ORDER ON DEFENDANTS DAVID KILCUP, INTERNATIONAL JETS, INC., AND ALDEN ANDRE'S MOTION TO DISMISS- 5

On November 21, 2013, Fallang met with Andre (Kilcup's associate) who told him that "the left gear actuator had been replaced due to a leak and that the aircraft did not have a right wing inspection because the maintenance requirements only require alternating wing inspections with each subsequent Phase V inspection." Dkt. 48, at 5. Andre assured Fallang that the Phase V inspection resolved all airworthy issues, and that the aircraft was airworthy. *Id.* The next day, "the parties flew the Aircraft on its delivery flight to Bozeman, Montana." *Id.* On that flight, the pressurization system was not working correctly. *Id.* Kilcup called Naples Jet Center to arrange for repairs and assured Fallang that the pressurization problem would be fixed. *Id.,* at 6. Cozumel did not rescind the Sales Agreement, and accepted delivery of the aircraft "based on Kilcup's promises that the Defendants would remedy the pressurization problem." *Id.*

On November 25, 2013, the aircraft was taken for another flight; the pressurization problem continued, rendering it, in the pilot's opinion, un-airworthy. *Id.*

On December 5, 2013, Naples Jet Center began repairs. *Id.* The next day, Fallang told Kilcup that Naples Jet Center found several problems, including: "1) a pressure line completely disconnected; 2) problems with various fittings, 3) problems with the mounds of sealant on many connections, and 4) a significant fuel leak in the starboard wing leading edge that was soaking into a high current wiring bundle." *Id.* The fuel leak rendered the aircraft un-airworthy. *Id.* According to the Amended Complaint, Kilcup assured Fallang "they will work through the aircraft's problems as expediently as possible." *Id.* Fallang reiterated to Kilcup that Cozumel would not pay for the repairs "since the leaks and damaged parts should have been resolved during the Phase V inspection." *Id.,* at 7. Kilcup promised him that Aircraft Solutions "agreed to pay the costs of repairs for the right hand wing and pressurization problem," and, if it fit "Cessna's definition, of a leak," the left hand wing leak. *Id.* Andre acquired and sent Naples Jet

Center "a salvaged air pressure controller." *Id.* At some point in December 2013 or January 2014, Naples Jet Center also discovered an issue with the left generator. *Id.,* at 8.

By January 10, 2014, Naples Jet Center stated that it had the aircraft repaired and ready for delivery. Dkt. 48, at 8. Naples Jet Center forwarded its bill to Defendants, but would not release the aircraft until the bill was paid. *Id.*

On January 23, 2014, Fallang took the plane for a test flight, but the pressurization problem persisted. *Id.* Naples Jet Center determined that the salvaged cabin pressure controller sent from Andre was also defective. *Id.,* at 9. Naples contacted Defendants and informed them that it purchased another cabin pressure controller. *Id.*

The aircraft was taken for two more test flights on February 19 and February 22, 2014. *Id.* Several new problems were discovered, including gear failures, lights failing to illuminate, a radar altimetry failure, and "unconnected electrical connectors." *Id.*

On February 23, 2014, Cozumel moved the aircraft to Total Aero Services for repairs; and then in March 2014 moved it to Orlando Citation Service Center, who found more repairs that were needed. *Id.* Cozumel had the aircraft and its logbooks extensively examined and many deficiencies were found. *Id.*

The Amended Complaint asserts that "Defendants never intended or had the ability to perform an adequate Phase V inspection, or knew or should have known that a Phase V inspection would not constitute a proper pre-purchase inspection." *Id.,* at 10. It maintains that Defendants made statements to "induce Cozumel to enter into the Agreement and accept the airworthiness of the aircraft upon delivery" and that Cozumel relied on the statements to its detriment. *Id.* According to the Amended Complaint, the post-delivery costs to rectify the various problems with the aircraft totaled $175,761.26. *Id.*

1    Cozumel filed this case on October 1, 2015. Dkt. 1. In its Amended Complaint, it makes

2 claims for: (1) breach of contract against International Jet, (2) breach of express warranty against

3 International Jet and Kilcup, (3) breach of implied warranty against International Jet and Kilcup,

4 (4) unjust enrichment against all Defendants, (5) breach of fiduciary duty against International

5 Jet and Kilcup, (6) fraud against International Jet and Kilcup, (7) fraudulent inducement against

6 International Jet and Kilcup, (8) negligent misrepresentation against all Defendants, (9) violation

7 of the Washington Consumer Protection Act ("CPA") against all Defendants, (10) negligence

8 against Aircraft Solutions, and (11) conspiracy against all Defendants. Dkt. 48. Cozumel seeks

9 damages, costs, and attorney's fees. *Id*.

10                    **II.    DISCUSSION**

11    Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

12 diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.

13 *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

14    **A.   STANDARD FOR MOTION TO DISMISS**

15    Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

16 legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

17 *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken

18 as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d

19 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

20 need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

21 to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

22 a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

23 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief

24

1    above the speculative level, on the assumption that all the allegations in the complaint are true

2    (even if doubtful in fact)." *Id*. at 1965.  Plaintiffs must allege "enough facts to state a claim to

3    relief that is plausible on its face." *Id*. at 1974.

### B. CLAIMS FOR BREACH OF CONTRACT, EXPRESS WARRANTY, IMPLIED WARRANTY, AND UNJUST ENRICHMENT AND THE DISCLAIMERS

Defendants International Jets, Kilcup and Andre argue that Plaintiff's claims for breach of contract, express warranty, implied warranty and unjust enrichment fail as a matter of law given Defendants' enforceable disclaimer of all warranties. Dkts. 54 and 58.  Defendants point to the "as-is" clause in the Sales Agreement and LOI, and the "as-is where-is" clause in the Aircraft Warranty Bill of Sale as the sources for their disclaimers of all warranties.  *Id.*

In Washington, warranty disclaimers in a contract involving a "noncommercial entity" "must be both: (1) explicitly negotiated and (2) set forth with particularity." *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wn.2d 428, 438 (2002)(*citing Berg v. Stromme*, 79 Wash.2d 184, 196 (1971)).  Under the rule announced in *Berg,* "the presumption leans against the warranty disclaimer." *Id.*  "The burden lies on the party seeking to include the disclaimer to prove its legality." *Id.*

> *Berg* involved the sale of a car from a car dealer to a consumer. The car had numerous mechanical problems, but the dealer claimed that the purchaser could not recover because the purchase contract contained warranty disclaimers. The *Berg* court noted that "printed disclaimers of warranty in the purchase of new automobiles are now regarded with increasing disfavor by the courts." Accordingly, the court stated, "unless there is proof of explicit departure from [the implied warranty of fitness with a new car], the presumption is that the dealer intended to deliver and the buyer intended to receive a reasonably safe, efficient and comfortable brand new car."

*Id*. at 438-439 (*quoting Berg*, at 185, 187 and 195).

Defendants' motion to dismiss (Dkt. 54) Plaintiff's claims for breach of contract, express warranty, implied warranty, and unjust enrichment should be denied.  There is no allegation that

ORDER ON DEFENDANTS DAVID KILCUP,
INTERNATIONAL JETS, INC., AND ALDEN
ANDRE'S MOTION TO DISMISS- 9

the warranty disclaimers in any of the documents were "explicitly negotiated." *Berg,* at 196. Further, they are general in nature and certainly do not "set forth with particularity" the "qualities and characteristics that are not being warranted." *Id.* Defendants assert that Cozumel is not an individual, but a limited liability company. Dkt. 54. They then apply law related to commercial transactions. *Id.* (*citing* RCW 62A.2-316(3)(a)-(b)). RCW 62A.2-316(4), however, codifies the *Berg* rule. RCW 62A.2-316 (3)(a)-(c) **and** (4) provide:

> (3) Notwithstanding subsection (2) of this section:
>
> (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults," or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>
> (b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he or she desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him or her;
>
> (c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade; . . . .
>
> (4) Notwithstanding the provisions of subsections (2) and (3) of this section and the provisions of RCW 62A.2-719, as now or hereafter amended, in any case where goods are purchased primarily for personal, family, or household use and not for commercial or business use, disclaimers of the warranty of merchantability or fitness for particular purpose shall not be effective to limit the liability of merchant sellers except insofar as the disclaimer sets forth with particularity the qualities and characteristics which are not being warranted. Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (RCW 62A.2-718 and RCW 62A.2-719).

While Defendants assert that the statute should only be read to protect unsophisticated consumers, and that Fallang, as a wealthy doctor using a separate company to by a plane, is not unsophisticated, they offer no support for this construction. There is nothing in the law they cite requiring application of the law related to commercial transactions solely because the buyer at

1 issue is not an individual. It is the nature of the transaction that is relevant. Plaintiff has plead

2 that the aircraft was purchased for Fallang's personal, family, or household use and not for

3 business or commercial use. Assuming, as the Court must for purposes of this motion, that this

4 assertion is correct, there is no reason to conclude that this was a "commercial" transaction.

5 Because Defendants' motion to dismiss these claims should be denied on this basis, the Court

6 will not reach the Plaintiff's other arguments that the motion should also be denied because the

7 disclaimers are ineffective due to Defendants' failure to satisfy certain conditions precedent

8 and/or that the warranty disclaimers are unconscionable.

C. **CLAIM FOR NEGLIGENT MISREPRESENTATION**

In Washington,

> A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that: (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499 (2007). Defendants argue that the claim for negligent misrepresentation should be dismissed against them because there are no facts alleged to support the third element, that "the defendant was negligent in obtaining or communicating the false information," or the fifth element, that the "plaintiff's reliance was reasonable." Dkts. 54 and 58.

Defendants' motion to dismiss this claim (Dkt. 58) should be denied. As to the third element, Plaintiff asserted that Defendants misrepresented to it that a Phase V inspection was a sufficient pre-purchase inspection. Plaintiff now alleges that it has since learned that the Phase V inspection was not a valid substitute. Plaintiff asserts that Defendants knew or should have known that the Phase V inspection was not an adequate substitute, and that Plaintiff relied to its

detriment on Defendants' urging to accept the Phase V inspection as the pre-purchase inspection. Moreover, Plaintiff points out that it alleges that it relied on Defendants' post purchase assertions that they would pay for the subsequent repairs. It has sufficiently alleged that Defendants were "negligent in obtaining or communicating the false information." *Ross,* at 499.

In regard to the fifth element, Defendants argue that due to the warranty disclaimers, it was not reasonable for Plaintiff to rely on Defendants' assertions. As above, at this stage in the litigation, the validity of the disclaimers remains in question. Defendants' motion to dismiss this claim based on the warranty disclaimers should be denied for the reasons provided above. Crediting the allegations and reasonable inferences in Plaintiff's favor, Plaintiff has alleged sufficient facts to support the fifth element. Defendants' motion to dismiss Plaintiff's claim for negligent misrepresentation should be denied.

### D. CLAIMS FOR FRAUD, FRAUDLENT INDUCEMENT AND FRAUDLENT MISREPRESENTATION

Claims for fraud are subject to the heightened pleading standards in Fed. R. Civ. P. 9(b), which requires plaintiffs to "state with particularity the circumstances constituting the fraud." This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. Untied States v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010)(*internal quotations omitted*). Washington treats claims for fraud and fraudulent inducement as the same claim. *See e.g., Elcon Const. Inc. v. Eastern Wash. Univ.,* 174 Wn.2d 157, 166 (2012).

> There are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Id.* Likewise, to make a claim for fraudulent misrepresentation in Washington, a plaintiff must allege nine elements, which are almost the same:

> (1) representation of an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the speaker's intent that the listener rely on the false representation, (6) the listener's ignorance of its falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the representation, and (9) damage from reliance on the false representation.

*Landstar Inway Inc. v. Samrow*, 181 Wn. App. 109, 124 (2014).

Plaintiff has sufficiently alleged facts, which if believed, support finding that Defendants Kilcup and International Jets made representations of existing facts that were material and false, meeting the first three elements. Plaintiff alleges in its Amended Complaint that on September 17, 2013, Fallang and Kilcup had a conversation in which Kilcup represented to the aircraft was due for a Phase V inspection and that the aircraft would be made airworthy. Dkt. 48. According to the Amended Complaint, Kilcup assured Fallang that the Phase V inspection would be an adequate pre-purchase inspection. Dkt. 48, at 4. Kilcup also stated that "a few maintenance deficiencies would be found during the Phase V inspection . . . and that he intended to deliver the aircraft to Cozumel in an airworthy condition." *Id.* It is not clear exactly when these statements were made, but it appears that they were made sometime before the first test flight, on October 21, 2013. According to the Amended Complaint, after this first test flight, Kilcup stated he would speak with the people at Aircraft Solutions and "assured Fallang that these problems [which included the starboard engine twice exceeding its temperature limitation on the test flight], along with any others, would be found and resolved during the pre-purchase Phase V inspection." Dkt. 48, at 5. On November 21, 2013, Fallang met with Andre who told him that "the left gear actuator had been replaced due to a leak and that the aircraft did not have a right wing inspection because the maintenance requirements only require alternating wing inspections

ORDER ON DEFENDANTS DAVID KILCUP,
INTERNATIONAL JETS, INC., AND ALDEN
ANDRE'S MOTION TO DISMISS- 13

1  with each subsequent Phase V inspection." Dkt. 48, at 5.  Andre assured Fallang that the Phase

2  V inspection resolved all airworthy issues, and that the aircraft was airworthy.  *Id.*  On

3  November 22, 2013, on the aircraft's delivery flight to Bozeman, Montana, when the

4  pressurization system failed, the Amended Complaint states that Kilcup again assured Fallang

5  that problems would be fixed.  *Id.,* at 6. Kilcup promised him that Aircraft Solutions "agreed to

6  pay the costs of repairs for the right hand wing and pressurization problem," and if it fit

7  "Cessna's definition, of a leak," the left hand wing leak. *Id.,* at 7.

8        Plaintiff has also alleged sufficient facts regarding Defendants' knowledge of the falsity

9  of their representations, that they intended Plaintiff to rely on the false representation, Plaintiff's

10 ignorance of its falsity, and Plaintiff's reliance on the false representations; elements four

11 through seven of the fraud claim. The Amended Complaint asserts that "Defendants never

12 intended or had the ability to perform an adequate Phase V inspection, or knew or should have

13 known that a Phase V inspection would not constitute a proper pre-purchase inspection." *Id.,* at

14 10.  It maintains that Defendants made statements to "induce Cozumel to enter into the

15 Agreement and accept the airworthiness of the aircraft upon delivery." *Id.*  The Amended

16 Complaint asserts that Defendants "induced Cozumel to purchase the aircraft with the intent to

17 never perform an adequate pre-purchase inspection or deliver the aircraft in an airworthy

18 condition." *Id.,* at 11.  Plaintiff alleges that it relied on the Defendants representations in

19 accepting delivery of the aircraft - to its detriment. *Id.,* at 10-11.

20       Defendants argue that Plaintiff did not have a right to rely on the representations due to

21 the warranty disclaimers.  As above, the validity of the warranty disclaimers is at issue.  At this

22 stage, Plaintiff has asserted sufficient facts, as a purchaser of a good for personal or household

23 use, that it had a right to rely on the representations, meeting the eighth element.  Further,

24

ORDER ON DEFENDANTS DAVID KILCUP,
INTERNATIONAL JETS, INC., AND ALDEN
ANDRE'S MOTION TO DISMISS- 14

Plaintiff has sufficiently plead it was damaged by reliance on the false representation, the final element. According to the Amended Complaint, the post-delivery costs to rectify the various problems with the aircraft totaled $175,761.26. Dkt. 48, at 10. Plaintiff's fraud and fraudulent inducement claims against Kilcup and International Jets should not be dismissed.

E. **CLAIMS FOR CONSPIRACY AND VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86,** *ET SEQ*.

Defendants move for dismissal of Plaintiff's claims for conspiracy and for violation of the CPA, arguing that because these claims are premised on Plaintiff's allegations of "false and misleading misrepresentations" by Defendants, to the extent that the fraud and negligent misrepresentation claims are to be dismissed, these claims also should be dismissed. As above, the claims for fraud and negligent misrepresentation should not be dismissed. Accordingly, these claims should not be dismissed either.

### III. ORDER

Therefore, it is hereby **ORDERED** that David Kilcup, International Jets, Inc., and Alden Andre's Motion to Dismiss (Dkt. 54) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 16th day of September, 2016.

_____
ROBERT J. BRYAN
United States District Judge